UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LLOYD F. AUDETTE,

  Plaintiff,

   v.

ADRIANA CARRILLO, et al.,

  Defendants.

*
*
*
*
*
*
*
*

Civil Action No. 15-cv-13280-ADB

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS, MOTION FOR RECONSIDERATION, AND MOTION FOR COURT ORDER REQUIRING RELEASE OF MEDICAL RECORDS**

BURROUGHS, D.J.

  Plaintiff Lloyd Audette ("Plaintiff") is a state inmate incarcerated at the Massachusetts Correctional Institution in West Concord, Massachusetts ("MCI Concord"). Plaintiff's First Amended Complaint asserted claims of deliberate indifference to serious medical needs and retaliation against eleven defendants [ECF No. 16 ("Compl.")]. Nine of these defendants previously moved to dismiss Plaintiff's claims, [ECF Nos. 42, 55, 57, 62], and this Court dismissed two of them from the case on June 27, 2016, [ECF No. 72].[1] In the June 27, 2016 Order, the Court, *inter alia*, denied Defendants Steven Robins and Andrea Tortolano's Motion to Dismiss with respect to claims of negligence and negligent infliction of emotional distress and Defendants Carol Higgins O'Brien and Lois Russo's Motion to Dismiss with respect to claims for prospective injunctive relief against the Defendants in their official capacities. Id.

---

[1] The Court dismissed all claims against Defendant UMass Correctional Healthcare ("UMCH") and Superintendent Kelly Ryan on June 27, 2016. [ECF No. 72]. Following the June 27, 2016 Order, claims against Defendants Adriana Carrillo, Charles DiCecca, Maria Angeles, Massachusetts Partnership for Correctional Health, LLC ("MPCH"), Monica Bharel, Andrea Tortolano, Steven Robins, Lois Russo, and Carol Higgins O'Brien remain before this Court.

Presently before the Court are (1) Defendants Robins and Tortolano's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(h)(3) or, in the alternative, to refer to a medical malpractice tribunal [ECF No. 79]; (2) Defendants O'Brien and Russo's Motion for Reconsideration [ECF No. 81]; and (3) Defendant Adriana Carrillo's Motion for a Court Order Requiring Lemuel-Shattuck Hospital to Release the Plaintiff's Medical Records [ECF No. 97].

For the reasons set forth below, (1) Robins and Tortolano's Motion to Dismiss or, in the alternative, to refer to medical malpractice tribunal is <u>DENIED</u> with respect to the motion to dismiss, but <u>ALLOWED</u> with respect to referral to a medical malpractice tribunal; (2) O'Brien and Russo's Motion for Reconsideration is <u>DENIED</u>; and (3) Carrillo's Motion for a Court Order Requiring Lemuel-Shattuck Hospital to Release the Plaintiff's Medical Records is <u>ALLOWED IN PART</u> subject to a protective order.

## I.      FACTUAL BACKGROUND

The following facts come from Plaintiff's Amended Complaint. [ECF No. 16]. Additional facts relevant to each motion will be discussed, as needed, in their respective sections. Plaintiff's claims arise out of alleged medical mistreatment and related retaliation that took place during his incarceration at the Massachusetts Correctional Institution in Shirley, Massachusetts ("MCI Shirley") and MCI Concord. Plaintiff became a patient in the Department of Correction ("DOC") healthcare system on or about October 13, 2009, when he began his incarceration at MCI Shirley. Compl. ¶ 15. While Plaintiff was incarcerated at MCI Shirley, his degenerative joint disease resulted in complications that required a total left knee replacement. <u>Id.</u> ¶ 18.

Defendant doctors Charles DiCecca and Adriana Carrillo, with assistance from Defendant physician assistant Andrea Tortolano, performed the knee replacement surgery at Lemuel-Shattuck Hospital on December 19, 2012. <u>Id.</u> ¶¶ 22–23. Plaintiff alleges that the

operating surgeons transected his popliteal vein, resulting in internal bleeding, persistent fever, pain-induced tachycardia, and a hematoma. Id. ¶¶ 25–28. Plaintiff further claims that following the operation, his medications were improperly administered and his knee was injured during a physical therapy session with Defendant physical therapist Robins. Id. ¶¶ 30–37. Plaintiff was discharged from the hospital on January 8, 2013, but continued to experience pain and instability in his left knee. Id. ¶¶ 38–39.

On March 12, 2013, Plaintiff was readmitted to Lemuel-Shattuck Hospital, and Defendant DiCecca performed revision knee surgery the following day. Id. ¶ 42. Several days after the second surgery, Plaintiff informed Defendant Carrillo (a doctor who had performed the first knee surgery) and Defendant Tortolano (a physician assistant who had helped with the first knee surgery) that he had noticed renewed instability in his left knee. Id. ¶ 43. Nevertheless, Plaintiff was discharged from the hospital on March 20, 2013. Id. ¶ 45.

Plaintiff claims that the pain, looseness, and instability in his left knee have persisted, but that Lemuel-Shattuck Hospital doctors have declined to perform a third surgery. Id. ¶¶ 48–50, 53–54. Plaintiff has filed internal grievances requesting a medical opinion from physicians unaffiliated with Lemuel-Shattuck Hospital, but claims that his requests have been denied in retaliation for filing suit. Id. ¶¶ 52–53.

## II.  TORTOLANO AND ROBINS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO REFER TO MEDICAL TRIBUNAL

### A.  Procedural Background

Plaintiff's Amended Complaint [ECF No. 16] alleges that Tortolano, as the physician assistant, and Robins, as the physical therapist, are guilty of deliberate indifference and civil conspiracy in violation of federal constitutional rights (Count I); retaliation and civil conspiracy in violation of federal constitutional rights (Count II); violation of state constitutional rights and

civil conspiracy (Count III); negligence (Count V); and negligent infliction of emotional distress (Count VI). On March 1, 2016, Defendants Tortolano and Robins filed a Motion to Dismiss for Failure to State a Claim. [ECF No. 62]. The Court allowed Defendants' Motion to Dismiss with respect to the deliberate indifference, retaliation, and conspiracy charges (Counts I–III), but denied the motion with respect to claims of negligence and negligent infliction of emotional distress (Counts V–VI). [ECF No. 72].

On July 22, 2016, Defendants Robins and Tortolano filed a Motion to Dismiss the remaining claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) or, in the alternative, to refer the claims to the medical malpractice tribunal. [ECF No. 79]. In their motion, Defendants argue that this Court should refuse to exercise supplemental jurisdiction over the remaining state law claims against Robins and Tortolano, or that this Court should refer the case to a medical malpractice tribunal prior to exercising supplemental jurisdiction. On August 19, 2016, Plaintiff filed an Opposition. [ECF No. 88]. Plaintiff argues that this Court should exercise supplemental jurisdiction, but does not oppose Defendants' request for referral to a medical tribunal (subject to limited pre-referral discovery).

## B.    Legal Standard

A motion to dismiss for lack of subject matter jurisdiction requires that the court "construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1209–10 (1st Cir. 1996). When a federal claim is pending before a court, that court has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a); see also Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996) ("A federal court

exercising jurisdiction over an asserted federal-question claim must also exercise supplemental jurisdiction over asserted state-law claims that arise from the same nucleus of operative facts."). This remains true even when the federal claims are against a separate party. See, e.g., Irizarry-Santiago v. Essilor Indus., 929 F. Supp. 2d 30, 34 (D.P.R. 2013) (exercising supplemental jurisdiction over one defendant is appropriate when the claims arose from the same "nucleus" of facts as federal claims against another defendant).

Even after all federal claims against a defendant have been dismissed, the decision to retain or dismiss pendant state law claims is generally "left to the broad discretion of the district court." Vera-Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir. 1995). In exercising its discretion, a court may consider "the interests of fairness, judicial economy, convenience, and comity." Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

As an alternative to dismissing the claims against them for lack of subject matter jurisdiction, Tortolano and Robins request that this Court refer the claims to a medical malpractice tribunal.[2] In Massachusetts, "[e]very action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal" tasked with deciding whether "the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result." Mass. Gen. Laws ch. 231, § 60B. The definition of an "action for malpractice, error or mistake" has been interpreted broadly, such that it includes "all treatment-related claims." Vasa v. Compass Med., P.C., 921 N.E.2d 963, 965 (Mass. 2010).

---

[2] The Court has already referred the cases against Defendant Adriana Carrillo and Defendant MPCH to a medical malpractice tribunal. [ECF Nos. 93, 94].

C.      **Analysis**

i.      <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Tortolano and Robins argue that this Court should decline to exercise supplemental jurisdiction over the remaining state law claims against them—negligence and negligent infliction of emotional distress—because the Court has dismissed each of the federal claims against them and the case is at an early stage. To support this position, Defendants cite cases stating that when federal claims are dismissed prior to the start of trial, courts generally decline to exercise jurisdiction over pendant state law claims. <u>See, e.g.</u>, <u>Rivera-Diaz v. Humana Ins. of P.R., Inc.</u>, 748 F.3d 387, 392 (1st Cir. 2014).

The Court is unpersuaded by this argument. As Plaintiff points out, Defendants cite cases wherein an exercise of supplementary jurisdiction was found to be improper because *every* federal claim against *every* defendant had been dismissed. By relying on these cases, Defendants fail to address the fact that federal claims against Defendants Angeles, Carrillo, DiCecca, Bharel, and MPCH remain pending before this Court. These federal claims arise out of the "same nucleus of operative facts" as Plaintiff's claims against Tortolano and Robins, making the exercise of supplemental jurisdiction proper. <u>Roche</u>, 81 F.3d at 256.

Specifically, Plaintiff alleges that (1) Tortolano, a physician assistant affiliated with Lemuel-Shattuck Hospital, assisted with the knee surgery that severed Plaintiff's popliteal vein and declined to provide assistance when Plaintiff complained of persisting knee problems, Compl. ¶¶ 11, 23, 43; and (2) Robins, a physical therapist at Lemuel-Shattuck Hospital, further injured Plaintiff's knee by "violently" snapping it during a physical therapy session, <u>id.</u> ¶¶ 12, 36. Each of these allegations arises out of alleged medical mistreatment that took place during Plaintiff's time at Lemuel-Shattuck Hospital. Plaintiff's claims against the defendants facing

federal claims similarly arise out of Plaintiff's hospital experiences. For example, Defendants

DiCecca and Carrillo (against whom Plaintiff has alleged federal claims) performed Plaintiff's

first knee surgery with assistance from Defendant Tortolano, and it was this surgery that resulted

in the need for physical therapy by Defendant Robins. Because the facts underlying Plaintiff's

state law claims against Defendants Tortolano and Robins are intimately connected to the facts

relevant to the federal claims remaining against other defendants, exercising supplementary

jurisdiction is proper. See Irizarry-Santiago, 929 F. Supp. 2d at 34.

Furthermore, the interests of "fairness, judicial economy, convenience, and comity" cited

by Defendants weigh in favor of exercising supplemental jurisdiction. Camelio, 137 F.3d at 672.

As noted by Plaintiff, declining supplemental jurisdiction would require this Court to hear

federal claims against a number of defendants while a state court hears related claims against

Tortolano and Robins that involve the same facts. This would likely require overlapping

testimony from individuals involved in Plaintiff's treatment at Lemuel-Shattuck Hospital, waste

judicial resources, and disproportionately burden the testifying parties. See, e.g., Earle v. City of

Huntington, No. 14-29536, 2016 WL 3198396, at *4 (S.D.W. Va. June 8, 2016) (holding that

"separate, concurrent state and federal actions would be duplicative" and contrary to the interests

of judicial economy); Blackrock Balanced Capital Portfolio v. HSBC Bank USA, Nat. Ass'n, 95

F. Supp. 3d 703, 710 (S.D.N.Y. 2015) ("It would be cumbersome to . . . task two courts with

making findings of fact when the same parties were involved in most of the claims."). Because

the claims against Tortolano and Robins arise out of the same facts as pending federal claims,

and because declining supplemental jurisdiction would result in inconvenience and wasted

resources, this Court DENIES the motion with regard to dismissing the claims for lack of subject

matter jurisdiction.

ii.     Referral to Medical Malpractice Tribunal

As an alternative to dismissing the case for lack of subject matter jurisdiction, Tortolano

and Robins ask this Court to refer the case to a medical malpractice tribunal prior to exercising

supplemental jurisdiction. Because Plaintiff does not object to this request, and because

Plaintiff's claims are clearly "treatment-related" under Mass. Gen. Laws ch. 231, § 60B, the

motion is <u>ALLOWED</u> with regard to referral to a medical malpractice tribunal.

## III.     O'BRIEN AND RUSSO'S MOTION FOR RECONSIDERATION

### A.     Procedural Background

Plaintiff's Amended Complaint [ECF No. 16] alleges that Defendant O'Brien (then-DOC

Commissioner) and Defendant Russo (then-MCI Concord Superintendent) are guilty of

deliberate indifference and civil conspiracy in violation of federal constitutional rights (Count I)

and retaliation and civil conspiracy in violation of federal constitutional rights (Count II). On

March 1, 2016, Defendants O'Brien and Russo filed a Motion to Dismiss for Failure to State a

Claim [ECF No. 57], arguing, in relevant part, that Plaintiff's claims were barred by res judicata

because a Massachusetts state court had previously dismissed Plaintiff's suit containing similar

allegations of medical mistreatment. [ECF No. 58; ECF No. 58, Ex. B].[3]

On June 27, 2016, this Court dismissed all claims against O'Brien and Russo in their

individual capacities, but denied their Motion to Dismiss on the grounds of res judicata, allowing

claims against O'Brien and Russo in their official capacities to go forward. [ECF No. 72]. This

was based on the Court's determination that the Superior Court's order was not a final decision

---

[3] Though res judicata claims are usually raised as an affirmative defense in an Answer to the
Complaint, it is appropriate to address these arguments on a motion to dismiss so long as doing
so does not endanger substantive rights and results in no prejudice to the plaintiff. See <u>Zotos v.
Town of Hingham</u>, No. 12-11126-JGD, 2013 WL 5328478, at *8 (D. Mass. Sept. 19, 2013).

on the merits, as its "primary conclusion" was that Plaintiff had failed to exhaust administrative remedies under Mass. Gen. Laws c. 127, § 38F, which (absent exigent circumstances) requires inmates to exhaust administrative remedies prior to filing a claim. Id. A dismissal for failure to exhaust administrative remedies, in contrast to a decision on the merits, is typically without prejudice or preclusive effect. Id.

On July 22, 2016, Defendants O'Brien and Russo filed a Motion for Reconsideration, arguing again that Plaintiffs' claims are barred by res judicata, that the DOC defendants lacked supervisory control over Plaintiff's medical care, and that, in any event, injunctive relief is inappropriate because Defendants are no longer employed by the DOC. [ECF No. 81]. On August 19, 2016, Plaintiff filed an Opposition to the Motion for Reconsideration. [ECF No. 89].

**B.  Legal Standard**

"Motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." De Giovanni v. Jani-King Int'l, Inc., 968 F. Supp. 2d 447, 450 (D. Mass. 2013) (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)). Generally, courts should be "loathe" to grant motions for reconsideration in the absence of these "extraordinary circumstances." Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass. 2000) (internal quotations and citations omitted).

Granting a motion for reconsideration is appropriate when the court has made an error of "apprehension," but not when it has made an error of "reasoning." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81–82 (1st Cir. 2008) (internal citations omitted). Therefore, a motion for reconsideration does not present defendants with an opportunity to rework and better articulate

previously-failed arguments. <u>De Giovanni</u>, 968 F. Supp. 2d at450 ("Motions for reconsideration are not to be used as a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented . . . prior to judgment.").

**C.     Analysis**

i.     <u>Res Judicata</u>

Plaintiff filed an action related to the instant federal action in Suffolk Superior Court in 2013. <u>See</u> [ECF No. 58]. In an order dated May 28, 2015, the Superior Court granted the Commissioner's motion to dismiss the complaint and denied Plaintiff's request for a temporary restraining order and a preliminary injunction. [ECF No. 58-2]. In its June 27, 2016 Order, this Court held that the Superior Court judgment did not have preclusive effect. O'Brien and Russo now ask the Court to reconsider its prior holding regarding the preclusive effect of the state court judgment.

The doctrine of res judicata requires that "[f]ederal courts . . . give to state-court judgments the same preclusive effect as would be given by the courts of the state from which the judgment emerged." <u>Johnson v. Mahoney</u>, 424 F.3d 83, 92–93 (1st Cir. 2005). Massachusetts courts apply the doctrine of res judicata "in a perfectly traditional manner" that prevents the "relitigation of issues that were or could have been dealt with in an earlier litigation." <u>Isaac v. Schwartz</u>, 706 F.2d 15, 16 (1st Cir. 1983) (internal quotation and citation omitted). Massachusetts courts recognize two types of res judicata: claim preclusion and issue preclusion. <u>See</u> <u>In re Sonus Networks, Inc, S'holder Derivative Litig.</u>, 499 F.3d 47, 56 (1st Cir. 2007).[4] "The

---

[4] Claim preclusion is often referred to as "res judicata," and issue preclusion is often referred to as "collateral estoppel." <u>Spark Energy Gas, LP v. Toxikon Corp.</u>, 908 F. Supp. 2d 267, 272–73 (D. Mass. 2012).

burden of establishing the affirmative defense of res judicata rests on the defendants." Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011).

A defense of claim preclusion requires three elements: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." Kobrin v. Bd. of Registration in Med., 832 N.E.2d 628, 634 (Mass. 2005) (internal citation and quotation omitted). If a defendant establishes each element of claim preclusion, a plaintiff and his or her privies are barred from relitigating claims that "were or could have been" decided in the prior action. Id. (quoting O'Neill v. City Manager of Cambridge, 700 N.E.2d 530, 532 (Mass. 1998)).

A defense of issue preclusion requires four elements: "(1) there was a final judgment on the merits in [a] prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue decided in the prior adjudication was essential to the earlier judgment." Kelso v. Kelso, 15 N.E.3d 767, 772–73 (Mass. App. Ct. 2014) (internal quotation and citation omitted). Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved . . . even if the issue recurs in the context of a different claim." Alicea v. Commonwealth, 993 N.E.2d 725, 731 (Mass. 2013) (internal quotation and citation omitted).

Claim and issue preclusion serve to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94 (1980). Defendants' arguments concerning claim and issue preclusion appear to overlap significantly, focusing on a single element of both claims: whether the Superior Court's decision was a final judgment on the

merits. Therefore, except where a distinction is required, the Court will refer to both claims

under the umbrella term of "res judicata."

Although O'Brien and Russo's motion does not specifically identify the grounds for

reconsideration from among those outlined in De Giovanni, 968 F. Supp. 2d at 450, they appear

to contend that this Court's prior decision rested on a "manifest error of law" with regard to a

single element of res judicata. Namely, they take issue with the Court's conclusion that the res

judicata requirements were not met because the Superior Court's primary conclusion concerned a

failure to exhaust administrative remedies, which does not typically qualify as a final judgment

on the merits. See, e.g., Santiago v. U.S. Dep't of Army, 39 F. Supp. 3d 164, 168 (D.P.R. 2014)

(noting that generally, dismissal on exhaustion grounds "does not have preclusive effect and does

not bar 'a subsequent hearing on the merits of properly exhausted claims'" (quoting Lebron-Rios

v. U.S. Marshal Serv., 341 F.3d 7, 14 (1st Cir. 2003))). They allege that the Superior Court's

decision dismissed Plaintiff's case for failure to state a claim, and therefore qualifies as a

judgment on the merits for preclusion purposes. See, e.g., In re Sonus Networks, 499 F.3d at 60

n.6 (noting that "under Massachusetts law, as elsewhere, a dismissal for failure to state a claim,

under Mass. R. Civ. P. 12(b)(6), operates as a dismissal on the merits" (quoting Isaac, 706 F.2d

at 17)).

Although Defendants correctly point out that the granting of a Mass. R. Civ. P. 12(b)(6)

motion to dismiss for failure to state a claim is generally considered to be a final judgment on the

merits, see id., the Court's previous Order found that the exhaustion argument was the animating

factor behind the claims' prior dismissal. Even if the Court was incorrect in finding that the

Superior Court's holding rested predominantly on exhaustion grounds, such an error would relate

not to the Court's "apprehension" of the situation or the law, but to its "reasoning" about how to

12

apply the res judicata standard to a prior decision that discussed both a failure to state a claim and a failure to exhaust administrative remedies. Ruiz Rivera, 521 F.3d at 81–82. Such errors of reasoning do not constitute grounds for reconsideration. Id.

Furthermore, even if the Superior Court based its ruling on the merits of Audette's claims in addition to his failure to exhaust administrative remedies, its decision cannot serve as the basis for a res judicata finding. When a court offers two grounds for dismissal, one of which constitutes dismissal "on the merits" and one of which does not, previous cases caution against finding preclusive effect. See Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1, 824 F.3d 1161, 1165 (9th Cir. 2016) (the prior court's non-merits-based ruling for lack of personal jurisdiction deprived the court of authority to rule on the merits); Stebbins v. Keystone Ins. Co., 481 F.2d 501, 508 (D.C. Cir. 1973) (no preclusive effect where "one ground of the judgment does not finally adjudicate the case on its merits but operates . . . to permit continued or further litigation upon an appropriate amendment or refiling"). Similarly, the Restatement (Second) of Judgments[5] advises the Court against a res judicata finding where there is a merits-based dismissal (here, for failure to state a claim) and a non-merits-based dismissal (here, for failure to exhaust administrative remedies).

Finally, Defendants' attempt to re-argue the res judicata defense amounts to an effort to "rehash arguments previously rejected or to raise ones that could, and should, have been made before judgment issued." Torres v. Gonzalez, 980 F. Supp. 2d 143, 146 (D.P.R. 2013) (internal quotations and citations omitted). Defendants' current res judicata defense is a better-articulated,

---

[5] "A dismissal may be based on two or more determinations, at least one of which, standing alone, would not render the judgment a bar to another action on the same claim. In such a case, if the judgment is one rendered by a court of first instance, it should not operate as a bar." Restatement (Second) of Judgments § 20 (Am. Law Inst. 1982).

better-researched version of a previously-rejected legal argument. [ECF Nos. 57, 72]. In filing this motion, Defendants are therefore impermissibly seeking a "second bite at the apple" of their res judicata claim, which has already been articulated and decided without clear error of law. Ne. Data Sys., Inc. v. Genesis Computer Corp., No. 83-3336-Y, 1992 WL 58743, at *8 (D. Mass. Mar. 23, 1992). Therefore, the Motion for Reconsideration on the grounds of res judicata is DENIED.

ii.      Lack of Supervisory Control

In their motion for reconsideration, O'Brien and Russo also argue that they cannot be held liable because they lacked supervisory control over Plaintiff's medical care and because they are no longer employed by the DOC. They further argue that asserting successor liability would be futile because their successors similarly lack control over Plaintiff's medical care. The Court notes that O'Brien and Russo's employment status changed following the filing of their initial motion to dismiss on March 1, 2016. In its June 26, 2016 Order, the Court permitted claims for prospective injunctive relief to go forward against O'Brien and Russo to the extent that they have supervisory control over Plaintiff's medical care.

On the issue of supervisory control, O'Brien and Russo argue that because MPCH was responsible for making all decisions relative to Plaintiff's medical care and they were employed by DOC, they had no role in the process and cannot be held liable. This argument fails for at least two reasons. First, O'Brien and Russo's attempt to discuss the issue of supervisory control amounts to an effort to "rehash arguments previously rejected or to raise ones that could, and should, have been made before judgment issued." Torres v. Gonzalez, 980 F. Supp. 2d 143, 146 (D.P.R. 2013) (internal quotations and citations omitted). O'Brien and Russo discussed the medical provider's role in medical decisions in their original motion to dismiss [ECF No. 58],

14

but failed to fully articulate at that time why liability should not attach to them as a result. Thus, with regard to the issue of supervisory control, O'Brien and Russo are impermissibly seeking a "second bite at the apple." Ne. Data Sys., 1992 WL 58743, at *8. Second, "[a]lthough [MPCH] has contracted to perform an obligation owed by the [DOC], the [DOC] itself remains liable for any constitutional deprivations caused by the policies or customs of [MPCH]. In this sense, the DOC's duty is non-delegable." Reaves v. Dep't of Corr., 195 F. Supp. 3d 383, 408 (D. Mass. 2016). Therefore, the Court declines to reconsider its previous holding with regard to supervisory control for O'Brien, Russo, or their successors. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## IV.  CARILLO'S MOTION TO RELEASE PLAINTIFF'S MEDICAL RECORDS

Because Plaintiff does not oppose the release of his medical records subject to a protective order, Adriana Carrillo's Motion for Court Order Requiring Lemuel-Shattuck Hospital to Release Plaintiff's Medical Records is ALLOWED IN PART. Lemuel-Shattuck Hospital shall release the records as requested, but pursuant to the protective order and acknowledgment form attached hereto.

## V.  CONCLUSION

For the foregoing reasons,

- Steven Robins and Andrea Tortolano's Motion to Dismiss or, in the alternative, to refer to medical malpractice tribunal [ECF No. 79] is ALLOWED with respect to referral to a medical malpractice tribunal, but DENIED with respect to lack of subject matter jurisdiction.

- Commissioner Carol Higgins O'Brien and Superintendent Lois Russo's Motion for Reconsideration [ECF No. 81] is DENIED. Because the remaining claims against the two Defendants name them in their official capacities only,

the Court hereby <u>ORDERS</u> that the Clerk substitute the current acting Commissioner (Thomas A. Turco) for Carol Higgins O'Brien, and Superintendent (Douglas DeMoura) for Lois Russo pursuant to Fed. R. Civ. P. 25(d).

- Adriana Carrillo's Motion for Court Order Requiring Lemuel-Shattuck Hospital to Release the Plaintiff's Medical Records [ECF No. 97] is <u>ALLOWED</u> subject to the protective order and acknowledgement form attached hereto.

**SO ORDERED.**

Dated: March 16, 2017

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE